497 F.2d 1113
 8 Fair Empl.Prac.Cas. 64, 8 Empl. Prac. Dec. P 9514
BRIDGEPORT GUARDIANS, INC., et al., Plaintiffs-Appellees,
Cross-Appellants,
v.
MEMBERS OF the BRIDGEPORT CIVIL SERVICE COMMISSION et al.,
Defendants-Appellants, Cross-Appellees.
 Nos. 898, 899, Dockets 73-2595, 74-1014.
 United States Court of Appeals, Second Circuit.
 Argued April 30, 1974.
Decided June 3, 1974.
 
 Ira Horowitz and Michael P. Koskoff, Bridgeport, Conn., for plaintiffs-appellees.
 J. Daniel Sagarin, Bridgeport, Conn. and Richard Sheiman, Asst. City Atty., Bridgeport, Conn., for defendants-appellants.
 Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 The appeal and cross-appeal here involve litigation which was commenced on February 24, 1972, in the United States District Court for the District of Connecticut, by the Bridgeport Guardians, Inc., the Housing Police Benevolent Association and several Black and Puerto Rican individuals who had taken but failed merit system examinations for initial appointments and promotions within the Bridgeport Police Department. The defendants, members and the Director of the Bridgeport Civil Service Commission and the Superintendent of the Bridgeport Police Department, were principally charged with administering entrance and promotion examinations which discriminated against Black and Spanish speaking persons on the basis of race, color and/or national origin. Declaratory and injunctive relief was sought under the Civil Rights Acts, 42 U.S.C. 1981, 1983[1] and the Declaratory Judgment Act, 28 U.S.C. 2201-2202.
 
 
 2
 On January 29, 1973, Hon. Jon O. Newman filed a Memorandum of Decision, reported at 354 F.Supp. 778, in which he found that the entrance test was unjustifiably discriminatory in effect, but that the plaintiffs had failed to sustain their burden of proof with respect to the promotion exam. As a remedy, the district court enjoined further use of the entrance examination and imposed hiring and promotion quotas which would have raised the level of minority employment within the Department to about 15%; the hiring quota was designed to introduce 50 Black and Puerto Rican patrolmen onto the force.
 
 
 3
 On June 28, 1973, we issued an opinion, reported at 482 F.2d 1333, affirming the judgment of the district court except with respect to the promotion quotas. We found that these were not warranted, but remanded to the district court so that it could consider whether other relief was appropriate. Familiarity with our prior opinion is assumed.
 
 
 4
 On remand, Judge Newman heard the parties informally in open court and in chambers, and on October 3, 1973, filed a Memorandum of Decision formulating and implementing a remedy in conformity with this court's opinion that any modification of promotion procedures should 'apply to all candidates for promotion irrespective of race or ethnic background.' 482 F.2d at 1341. He refused to impose a modified promotion quota or to enlarge the hiring quota, but the time-in-grade criterion for eligibility for promotion was reduced from 3 years to 1 year and the weighting of seniority, and training, experience and general qualifications in the promotion procedure was decreased from 40% To 10%. Moreover, the court determined that the existing eligibility list for the rank of sergeant should cease to be valid one year after the date on which the 15th minority patrolman is appointed.
 
 
 5
 The plaintiffs urged below and on this appeal that the hiring quota should be increased to 75 so that the 15% Minority level is achieved. We agree with the district court that the affirmance of this part of Judge Newman's initial decree by this court was unqualified and we see no reason to change the views expressed there. Plaintiffs' claim that the absence of immediate minority group representation in supervisory ranks undercuts recruitment because of discouragement is effectively answered by the fact that some 271 applications were received from minority members for the examination held after this court's initial decision. 231 took the exam and 81 were successful. After disqualification for failure to meet announced requirements as well as to pass physical examinations, an eligible list of 35 has emerged.
 
 
 6
 The defendants have appealed from the determination shortening the life of the sergenant's eligibility list. They urge that it is an abuse of discretion since promotion candidates are normally entitled to have their rankings stand for a two-year period. We do not agree. The court below is familiar with and sensitive to the issues here, which are delicate as well as intricate. There has been, in our view, compliance with the decision of this court, and the fashioning of the remedy here is a particularly appropriate task for the district court. Coalition for Educ. in Dist. One v. Board of Elections, 495 F.2d 1090, 1094 (2d Cir. 1974) (per curiam).
 
 
 7
 Plaintiffs further urge that the court below abused its discretion by refusing to grant counsel attorneys' fees as part of costs. The district court found that it had discretion to award attorneys' fees, but declined to exercise it here since the litigation was not compelled by the defendants' 'unreasonable, obdurate obstinacy,' the test employed by this court in Stolberg v. Trustees for the State Colleges of Connecticut, 474 F.2d 485, 490 (1973). While attorneys' fees are permitted in actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., by express statutory authorization, 42 U.S.C. 2000e-5(k), the failure of Congress to provide for such fees in 1983 cases is, in our view, significant.[2] While we do not rule out the possibility that counsel fees might be appropriate in some 1983 cases, even absent statutory authority, we see no reason to reverse the determination below denying them. In Jordan v. Fusari, 496 F.2d 646, 650 (2d Cir. 1974), this court remanded the question of the propriety of legal fees in a 1983 action to the district court in view of the inadequacy of the record before the district judge in that case. There is no such problem here. The trial judge was fully aware of all of the facets of this case, the contribution made by counsel for plaintiffs, as well as the reasonableness of the resistance to the plaintiffs' claims by the defendants. We do not find any abuse of discretion.
 
 
 8
 Affirmed.
 
 
 
 [1]
 This action was filed before the 1972 amendment to Title VII of the Civil Rights Act of 1964, Pub.L. No. 92-261, 2(1), (2), 86 Stat. 103 (March 24, 1972), amending 42 U.S.C. 2000e(a), (b) (1970), which had the effect of extending coverage of the Act to state and municipal employees
 
 
 [2]
 We do not overlook the Supreme Court's recent opinion in Bradley v. School Bd., U.S. , 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), a school desegregation case commenced in 1961 under 1983. The Court there held that 718 of Title VII of the Emergency School Aid Act, 20 U.S.C. 1617, which became effective on July 1, 1972, see Pub.L. 92-318, 2(c)(1), 86 Stat. 236, had application to pending litigation and provided a basis for a fee award. Section 718, however, expressly authorizes the recovery of attorneys' fees in school desegregation suits brought under 1983. Here no such statute exists