**BRIDGEPORT EDUCATION
ASSOCIATION et al.**

v.

**Howard ZINNER et al.**

Civ. No. B–74–353.

United States District Court,
D. Connecticut.

June 8, 1976.

Raymond C. Lyddy and E. Stanton Kennedy, Bridgeport, Conn., for plaintiffs.

Warren W. Eginton, Stamford, Conn., for defendants.

## RULING ON MOTION TO REMAND

NEWMAN, District Judge.

■ This motion to remand a removed civil lawsuit to state court raises important and novel issues concerning the infrequently construed "refusal" provision of the civil rights removal statute, 28 U.S.C. § 1443(2).[1] The suit was brought in the Connecticut Court of Common Pleas for Fairfield County by the Bridgeport Education Association and several Bridgeport public school teachers against the members of the Bridgeport Board of Education, the city comptroller, the acting school superintendent, and three

---

1. Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*

28 U.S.C. § 1443 (emphasis added).

persons appointed on an "acting" basis by the Board on August 26, 1974, to positions of responsibility within the Bridgeport public school system. Plaintiffs alleged that these three appointments were made in violation of the City Charter, the Rules of the City Civil Service Commission, and the teachers' contract between the Association and the Board. Specifically, plaintiffs contend (1) that the appointments were made without publicizing the existence of the positions or holding examinations for filling them, (2) that the Board does not intend to hold examinations nor appoint from eligibility lists, and (3) that required qualifications and standards have not been established with respect to one appointment. The removal petition, as amended, filed on behalf of the defendant Board members and the acting superintendent,[2] alleges that "they refused to make appointments in accordance with the Charter and Rules on the ground that to do so would be inconsistent with Title 42, United States Code, Sections 2000e *et seq.* and 1981 *et seq.*" In effect, the defendants contend that following civil service rules, instead of making the minority group appointments here challenged, would have violated federal statutes barring racial discrimination in employment.

The removing defendants allege that the second clause of § 1443(2) entitles them to remove the plaintiffs' suit to this Court, *i. e.,* that they are refusing to follow the Charter and civil service rules because doing so would be "inconsistent with" federal laws providing for equal rights. Plaintiffs' motion to remand was considered by Magistrate Latimer, who presented to this Court a proposed ruling that would have granted the motion. This Court has concluded that the motion ought to be denied. The issue, however, is not free from doubt, and because the Magistrate's discussion forcefully argues the position in favor of remand and illuminates the issues involved, the principal portions of his proposed ruling are set forth as an appendix to this opinion.

Several issues arise in determining whether the suit against the defendants is removable under the "refusal" clause of § 1443(2): what defendants may invoke the clause, what actions of defendants are covered, what federal laws may be relied upon to justify a refusal to act, and what is the standard by which to test whether the defendants' actions are "inconsistent with" federal law. As Judge Friendly has observed, "The interpretative problems are difficult, due to the age of the statute, the lack of decisions thereunder and the mangling which it has undergone. . . ." *New York v. Galamison,* 342 F.2d 255, 258 (2d Cir. 1965). His comments, directed primarily to § 1443(1) (the "cannot enforce" clause) and the first clause of § 1443(2) (the "color of authority" clause), apply as forcefully to the second clause of § 1443(2) (the "refusal" clause).

The first provision permitting removal in a civil rights context by a defendant sued for *not acting* in a certain way was § 5 of the Habeas Corpus Suspension Act, Act of March 3, 1863, C. 61, § 5, 12 Stat. 756. Those entitled to remove were "any officer, civil or military, or . . . any other person." They could remove when sued for "any act omitted to be done" during the

---

**2.** The fact that not all defendants in the state court action joined in the removal petition is not a controlling circumstance. All defendants entitled to removal have joined in the petition. Moreover, a good case could be made for removal even without such unanimity. In *Bradford v. Harding,* 284 F.2d 307 (2d Cir. 1960), Judge Friendly construed 28 U.S.C. § 1442 to allow removal by a federal officer even when some persons entitled to join in the removal petition did not. A similar construction would seem appropriate for civil rights removal. The language of § 1443 specifies that a case may be removed by "the defendant" and then specifies those actions in which a defendant may remove

to the federal court. This language parallels the early antecedents of § 1442, *see Bradford v. Harding,* 284 F.2d at 310, and differs from the provisions of the general removal statute, 28 U.S.C. § 1441 (removal by "the defendant or the defendants"), and the similar language of 28 U.S.C. § 1446. The general rule that all defendants who may properly join in the removal petition must do so, 1A J. Moore, *Federal Practice* ¶ 0.168(3.–2), need not govern § 1443(2) removal. Such civil rights removal represents a longstanding judgment by Congress that defendants in certain types of civil rights cases should be able to remove their cases to the federal courts.

Civil War "by virtue or under color of any authority derived or exercised by or under the President of the United States, or any act of Congress." To whatever extent the *ejusdem generis* canon aids construction in this context, the phrase "any act omitted" followed "any arrest or imprisonment made, or other trespasses or wrongs done or committed."

Three years later Congress formulated a civil rights removal statute, § 3 of the Civil Rights Act of 1866, Act of April 9, 1866, C. 31, § 3, 14 Stat. 27, which is the direct antecedent of § 1443. The Act authorized removal by "any officer, civil or military, or other person." As passed by the Senate, the bill provided that they could remove when sued for "any arrest or imprisonment, trespasses, or wrongs done or committed by virtue or under color of authority derived from this act or the act to enlarge the powers of the Freedmen's Bureau." In the House this last reference to a source of authority for the acts done was broadened to read "the act establishing a Bureau for the Relief of Freedmen and Refugees, and all acts amendatory thereof." Cong.Globe, 39th Cong., 1st Sess. 1115 (1863). Then on March 8, 1866, the House floor leader of the bill, Representative Wilson, offered an amendment to insert after the words "amendatory thereof" the phrase "or for refusing to do any act upon the ground that it would be inconsistent with this act." *Id.* at 1271. No explanation was made at that time. The bill was recommitted to the Judiciary Committee on March 9, *id.* at 1296, and reported back to the House floor on March 13, *id.* at 1366. On that date, several amendments, including Wilson's "refusing to act" amendment, were adopted. In presenting it for approval, Wilson said, "I will state that this amendment is intended to enable State officers, who shall refuse to enforce State laws discriminating in reference to [the rights created by § 1 of the bill] on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws." *Id.* at 1367. The House received no other explanation or discussion of the amendment, despite Wilson's assurance,

just prior to voting on final passage, that "No amendment has been offered by the committee, except the last one [concerning appellate jurisdiction of the Supreme Court], that has not been fully discussed while the bill was pending before the House on a former occasion." *Ibid.*

In the Senate the significance of the "refusing to act" amendment was wholly obscured by its adoption along with the amendment broadening the statutory authority for acts done that were a permissible basis for removal. On motion of Senator Trumbull, and without discussion, the phrase, "to enlarge the powers of the Freedmen's Bureau," after the words "an act" was replaced by the following language: "establishing a Bureau for the Relief of Freedmen and Refugees, and all acts amendatory thereof, or for refusing to do any act upon the ground that it would be inconsistent with this act." *Id.* at 1413.

The Revised Statutes of 1874 carried forward § 3 of the Civil Rights Act of 1866 as § 641 and included language permitting removal when suit was brought against "any officer, civil or military, or other person, for any arrest or imprisonment or other trespasses or wrongs, made or committed by virtue of or under color of authority derived from any law providing for equal rights as aforesaid, or for refusing to do any act on the ground that it would be inconsistent with such law. . . ."

The 1948 codification, in dividing the removal provision into the present two subsections of § 1443, made the following changes in wording, as Judge Friendly has pointed out in *Galamison,* 342 F.2d at 261: the words "any officer, civil or military, or other person" were dropped, and nothing was supplied to replace them, and the words "any arrest or imprisonment or other trespasses or wrongs, made or committed by virtue of or under color of authority derived from any law providing for equal rights as aforesaid" were contracted to "any act under color of authority derived from any law providing for equal rights."

There has been scant judicial construction of the "refusal" clause of § 1443(2) and

virtually none in litigation where such construction was essential to the outcome. The clause has arguably been implicated in four decisions allowing removal. In *O'Keefe v. New York City Bd. of Elections,* 246 F.Supp. 978 (S.D.N.Y.1965), municipal elections officials were sued in state court to require them to follow provisions of state law limiting voter registration to those who could read and write English; the officials relied on conflicting provisions of § 4(e) of the federal Voting Rights Act of 1965. Removal was permitted under § 1443(2) "in that the action was brought against the Board, an official body, for acting under color of authority derived from § 4(e) of the Voting Rights Act, which is a law providing for equal rights." *Id.* at 980. The decision thus appears to rely solely on the "color of authority" clause of § 1443(2); no explicit reliance was placed on the "refusal" clause, though, as will frequently be the case, the officials seeking removal who were sued for following the federal statute could have alleged that they were being sued for refusing to do an act, namely, refusing to register only those literate in English as required by state law, on the ground that compliance would have been inconsistent with federal law.[3]

In *Burns v. Board of School Commissioners,* 302 F.Supp. 309 (S.D.Ind.1969), *aff'd,* 437 F.2d 1143 (7th Cir. 1971), school board members were similarly caught between conflicting requirements of federal court orders in a school desegregation suit brought by the United States Attorney General under provisions of the Civil Rights Act of 1964 and requirements of state law. Removal was grounded on both clauses of § 1443(2):

> In carrying out the order of this court, defendants may fairly be said to come within the first phrase of § 1443(2) as

persons authorized (ordered) to act for a federal officer (this Court) in affirmatively executing duties under a federal law providing for equal civil rights. It is equally apparent that they would qualify under the second phrase, as state officers threatened with punishment for contempt if they disobey the order of a state court and refuse to undo their actual or contemplated transfer of teachers on the ground that to do so would be inconsistent with such federal law.

*Id.* at 312. In similar circumstances, removal was based solely on the first clause of § 1443(2) in *Bohlander v. Independent School Dist. No. One,* 420 F.2d 693 (10th Cir. 1969). In *Linker v. Unified School Dist. # 259,* 344 F.Supp. 1187, 1195 (D.Kan.1972), a suit by parents to enjoin a school district from operating under a desegregation agreement worked out between the school district and HEW to ensure compliance with Title VI of the Civil Rights Act of 1964, removal was approved under § 1443(2), without specification of either clause, relying on *Bohlander* and *Burns.*

Against this background of legislative history and judicial decisions plus the Supreme Court's opinion in *Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), which concerned primarily § 1443(1) and the first clause of § 1443(2), the issues in this case can be considered.

■ I. Determining what state court defendants can invoke the "refusal" clause is clouded by the 1948 Reviser's decision to omit any referent for the language that became § 1443(2). In *Peacock* the Court decided that the "definition of the persons entitled to removal" should be read "in the light of the more expansive language of the statute's ancestor." 384 U.S. at 816, 86 S.Ct. at 1806. Accordingly, the Court fo-

---

**3.** Indeed, Judge Friendly subsequently viewed *O'Keefe* as a case that had allowed removal under the second ("refusal") clause of § 1443(2). *See New York v. Horelick,* 424 F.2d 697, 703 n.6 (2d Cir. 1970). That view was perhaps influenced by the Supreme Court's limitation of the first ("color of authority") clause of § 1443(2), to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *Greenwood v. Peacock,* 384 U.S. 808, 824, 86 S.Ct. 1800, 1810, 16 L.Ed.2d 944 (1966). The municipal election officials were not federal officers, though they were arguably "authorized to act for" federal officials in implementing the Voting Rights Act.

cused on the phrase "officer, civil or military, or other person," which was in § 5 of the Habeas Corpus Suspension Act of 1863, § 3 of the Civil Rights Act of 1866, and § 641 of the Revised Statutes of 1874. After considering whether "other person" should mean "any person," the phrase in § 641 which is the referent for what is now § 1443(1), or a person acting with federal officers, the Court adopted the latter construction, stating, "we hold that the second subsection of § 1443 confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." 384 U.S. at 824, 86 S.Ct. at 1810.

To this statement was appended footnote 22, which appears to be the only explicit language in a Supreme Court decision discussing the "refusal" clause of § 1443(2). The note quotes Rep. Wilson's explanation, quoted earlier herein, of the amendment that added the "refusal" clause, and observes: "It is clear that removal under that language is available only to state officers." 384 U.S. at 824 n.22, 86 S.Ct. at 1810. That observation undermines the Court's valiant effort to parse the present language of § 1443, a task necessitated by the 1948 Reviser's deletion of referents.

If, as Peacock suggests, the phrase "any officer, civil or military, or other person" means only federal officers and those persons acting with or for them, it is difficult to make the statutory language consistent with Rep. Wilson's reference to state officers. That is one reason the phrase "or other person" may have been intended to be as broad as "any person" in the first half of § 641; Rep. Wilson may have thought the phrase was this broad and therefore added the "refusal" clause without thinking there was any need to supply a different referent.

Peacock held that for purposes of the first ("color of authority") clause of § 1443(2) "any officer, civil or military, or other person" means "federal officers or agents and those authorized to act with or for them." The problem confronting this Court is that of defining the referent for the "refusal" clause. There are three potential solutions. The class of defendants entitled to rely on the "refusal" clause may be composed of (a) federal officials and those, including state officers, acting with or for them, (b) state officers, or (c) any person.

Each of the three choices has some merit, but also encounters some difficulty. Choice (a) best harmonizes the language of § 1443(2) and especially that of its predecessor, § 641 with the holding of Peacock. Since the Supreme Court selected (a) as the referent for the first clause of § 1443(2) and since the "color of authority" and "refusal" clauses had the same referent in § 641, which the Supreme Court tells us is to guide interpretation of § 1443, consistency is achieved by selecting (a) as the referent for the "refusal" clause. That interpretation, however, puts an unwarranted limitation on the purpose of the "refusal" clause as explained by Rep. Wilson. He did not suggest that the clause was available only to a narrow range of state officers. Moreover, the Peacock decision itself states in note 22 that the clause is available to state officers, without any suggestion of a limitation to state officers acting with or for federal officers.

Choice (b) fully carries out the intention of Rep. Wilson and the Supreme Court's dictum in note 22 of Peacock. This reading, however, places a considerable strain on the statutory language. It means that § 1443(2), which in terms contains no referent, should be construed to have two different referents, one for each of its two clauses. Or, if § 1443(2) is construed in light of § 641, as Peacock teaches, then the single referent "officer, civil or military, or other person" means one thing for the "color of authority" clause and something else for the "refusal" clause.

Choice (c) has the salutary result of letting any person remove to federal court who finds himself sued for not following state law when his refusal is based on a federal equal rights law. However appropriate that result, it is not what the sponsor

of the "refusal" clause said it would accomplish.[4] Moreover, this choice gives a reading to the referent of the "refusal" clause that is exactly contrary to the way the Supreme Court construed the referent of the "color of authority" clause in *Peacock.*

On balance, choice (b) seems preferable and is at least appropriate for decision of this case. It carries out the legislative intent, to the extent it is known. It makes the "refusal" clause available for a class of persons whom the 39th Congress must surely have wanted to have access to federal courts. If Rep. Wilson can be said to have erred in failing to provide a referent for the clause, and if the 1948 Reviser compounded the problem by deleting the referent for the entire subsection, so be it.

If "state officers" can remove under the "refusal" clause, a question remains whether the term means those officers who actually are officials of a state or simply any public official of a state or municipality who would be considered to be acting under color of state law. The latter interpretation seems far more consonant with the remedial purposes of the 1866 legislation. The *O'Keefe* and *Burns* decisions, to the extent they relied on the "refusal" clause, did so simply because the city election and school officials there involved were acting under color of state law, without regard to whether they were state as distinguished from municipal officials. The removing defendants in this case are plainly acting under color of state law. In any event, the removing school board members in this case are properly considered state officials under state law.[5]

II. The second issue requires determination of what acts by state officers provide the occasion for removal. The statutory language of the "refusal" clause in § 1443(2), in § 641, and in § 3 of the 1866 Act says "any act." That seems plain enough. Moreover, as more fully discussed in IV, *infra,* the considerations that prompted the Supreme Court to give a somewhat narrow construction to the potentially broad language of § 1443(1) and the "color of authority" clause of § 1443(2) do not apply to the "refusal" clause. However, the fragmentary expression of legislative intent from Rep. Wilson, which is relied on to tell us who can remove, includes the thought that state officers can remove when they "refuse to enforce State laws discriminating in reference to [the rights created by § 1 of the 1866 Act] on account of race or color." Cong.Globe, 39th Cong., 1st Sess. 1367 (1866). If these words are taken as a limitation on the statutory phrase "any act," it could mean that removal is permitted only when the state law by its terms requires racial discrimination.

---

4. However, depending upon how Rep. Wilson's crucial statement of legislative intent is understood, an interpretation of the "refusal" clause that permits any person to use it is not necessarily inconsistent with what he said. He observed that the clause will "enable" state officers to remove. Possibly, he thought that any person caught between conflicting commands of federal and state law should be able to remove, that a "refusal" clause would be useful to make sure removal would be available when the defendant was sued for not following state law, rather than for following federal law, and that those most likely to be in that situation were state officers. In other words, he may have used the word "enable" in the sense that the clause includes state officers, not that it is limited to them.

5. Under Connecticut law, local school boards are agencies of the State. *See, e. g., Herzig v. Board of Educ.,* 152 Conn. 144, 204 A.2d 827 (1964); *Norwalk Teachers' Ass'n v. Board of Educ.,* 138 Conn. 269, 83 A.2d 482 (1951); Conn.Gen.Stat. § 10.220 *et seq.* Members of local boards of education are accordingly treated as state officers, *see Maitland v. Thompson,* 129 Conn. 186, 27 A.2d 160 (1942). *See also Sherman v. Kemish,* 29 Conn.Supp. 198, 279 A.2d 571 (1971). A superintendent of schools is "the executive [officer] of the board." Conn. Gen.Stat. § 10–157; *cf. Alcorn ex rel. Hoerle v. Thomas,* 127 Conn. 426, 17 A.2d 514 (1941). Hence, the petitioners sufficiently qualify as agents of the State to be considered its officers for purposes of civil rights removal. Moreover, the State General Assembly itself enacted the charter provision that defendant petitioners are alleged to have violated, An Act Amending the Charter of the City of Bridgeport by Establishing a Civil Service Commission, Special Act No. 407 (June 5, 1935), and the local rules derive their authority from that charter provision.

Again, *O'Keefe* and *Burns* did not find the "refusal" clause so limited.

█ I am persuaded that the phrase "any act" should be read literally, without limitation. Rep. Wilson's reference to a racially discriminatory state law is simply an illustration of the most dramatic circumstance warranting removal, but not necessarily the only one. In any event, it is appropriate to construe the "refusal" clause to permit removal when the removing defendants make a colorable claim that they are being sued for acting pursuant to a state law which, though facially neutral, would produce or perpetuate a racially discriminatory result as applied. That is the claim in this case, and it is sufficient to warrant removal.[6]

█ III. The third issue is what federal law the removing defendants are entitled to rely on to justify their refusal to act. The reference in the "refusal" clause to "such law" clearly means "any law providing for equal rights" as used in the "color of authority" clause. In *Peacock* the Court construed the "color of authority" clause to permit removal by those sued for acting under any federal law providing for "equal civil rights," 384 U.S. at 824, 86 S.Ct. 1800, the phrase used in § 1443(1). Even the most closely reasoned argument in favor of a broad reading of § 1443 concedes that the laws providing for "equal rights" as used in § 1443(2) means the same thing as laws providing for "equal civil rights" as used in § 1443(1). Amsterdam, "Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial," 113 U.Pa.L.Rev. 793, 864 n.270 (1965).

The removing defendants here rely on 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The former was explicitly stated in *Peacock* to be a law qualifying under the statutory

definition of § 1443, 384 U.S. at 825, 86 S.Ct. 1800, and there can be no doubt that Title VII, at least in the context of racial discrimination, also qualifies.

IV. The final issue concerns the test to be applied in determining, for removal purposes, whether the act refused to be done is inconsistent with a federal equal rights law. It is on this issue that I disagree with the Magistrate's proposed ruling. Relying on the somewhat narrow construction that the Supreme Court has given to § 1443(1) and the "color of authority" clause of § 1443(2) in *Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and *Greenwood v. Peacock, supra,* Magistrate Latimer concluded that removal under the "refusal" clause should be permitted only when the removing defendants can allege a clear conflict between the explicit commands of state and federal law. He also pointed out that such a direct conflict has been present in the cases thus far decided that permitted removal under the "refusal" clause.

█ Several considerations persuade me to read no limitation into the nature of the inconsistency that the removing defendants must allege. First, the language of the "refusal" clause is clear on this point. It requires only that the defendants' refusal to act was "on the ground" that acting would be inconsistent with federal law. The statute creates no stringent standard as to the nature of the inconsistency. It establishes a subjective test, to be met by evidence of what in fact was the reason for the defendants' failure to act. To decide at this point whether the local civil service requirements are really inconsistent with Title VII or § 1981 in the circumstances of this case would be to make entitlement to removal depend on whether the defendants will prevail on the merits of their claim. The removing defendants have alleged at

---

**6.** In *New York v. Horelick, supra,* Judge Friendly illustrated the availability of the "refusal" clause by positing the case "admittedly unlikely today, where a teacher was being prosecuted for having admitted black children to a school in which racial segregation was required by state law." 424 F.2d at 703.

Whether the analogy is apt or not (which is the issue on the merits), these removing defendants allege they are being sued for having appointed minority school officials to a school system in which racial discrimination would be perpetuated by adherence to state and local civil service requirements.

least a colorable claim that their refusal to act was on the ground that following the civil service requirements would be inconsistent with federal law. The plaintiffs do not dispute that this was the removing defendants' good faith belief. That satisfies the terms of the statute.

■ Second, making the "refusal" clause available only when the conflict between state and federal law is apparent on the face of the statutes would provide removal only in those cases where it is least necessary and deny it in those more subtle cases, like the pending one, where it is most appropriate for the difficult issue of the availability of the asserted federal defense to be decided by a federal court.[7] It is true that the argument for allowing removal under § 1443 to litigate in federal court unsettled federal issues, rather than only the clearest federal issues was urged upon the Supreme Court in the Amsterdam article previously cited, 113 U.Pa.L.Rev. at 857–58, and this concern was implicitly rejected when the Court construed § 1443(1) and the "color of authority" clause of § 1443(2). But there are important differences between the considerations that prompted the narrow constructions of § 1443(1) and the "color of authority" clause of § 1443(2) and the considerations that apply to the "refusal" clause. These differences form the third reason for imposing no limitation on the test of "inconsistent with" federal law.

In *Rachel* and *Peacock,* the Court was concerned, as it had been in the entire line of cases from *Virginia v. Rives,* 100 U.S. 313, 25 L.Ed. 667 (1880), to *Kentucky v. Powers,* 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906), with claims to federal court removal made by those who alleged that they were the victims of some discrimination or inability to vindicate a federally protected right. Whatever the merit of permitting removal of their cases to federal court, doing so would have significantly upset the balance between state and federal courts and precipitated the removal of a significant number of cases, including many criminal cases. Moreover, since § 1443(1) permits removal only by a person who "is denied or cannot enforce" his rights in a state court, a broad construction of this statute would have required frequent federal court determination of the efficacy of state tribunals. That concern weighed heavily with the Supreme Court. "The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." *Greenwood v. Peacock, supra,* 384 U.S. at 828, 86 S.Ct. at 1812.

Neither of these considerations has any force when removal is sought under the "refusal" clause. In the first place, it is hardly to be anticipated that there will be many cases like the present one where state officials elect to disregard facially neutral state or local provisions in the belief that federal civil rights statutes require them to do so to redress past racial discriminations. That circumstance does not appear in any removal case reported to date. A narrow construction of the "refusal" clause is simply not needed to avoid the prospect of wholesale removal. Secondly, a literal reading of the "refusal" clause does not require a federal court to make any judgment whatever about the state court from which removal is sought. Unlike § 1443(1), the "refusal" clause does not make removal turn on whether the right asserted can be vindicated in the state court. Of course, the removing defendant believes he may find a federal court more solicitous of his federal defense than the state court might have been. That is the expectation of all defendants entitled to remove. *Cf.* 28 U.S.C. § 1442.

The issue on the merits in this case is extremely troublesome. Whether a racial

---

7. The presence of a federal defense does not normally create federal question jurisdiction, *e. g., Louisville & Nashville R. R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 S.Ct. 126 (1908), and therefore such a defense will not support removal under the general removal provisions of 28 U.S.C. § 1441, *e. g., PAAC v. Rizzo,* 502 F.2d 306 (3d Cir. 1974), but in § 1443(2) Congress has specifically and for good reason authorized removal when the particular federal defense pleaded in this case is asserted.

preference can be ordered by a court as a remedy after a finding of prior discriminations is not a settled issue. Compare *Vulcan Society of the New York City Fire Dept. v. Civil Service Comm'n,* 490 F.2d 387 (2d Cir. 1973), and *Bridgeport Guardians, Inc. v. Bridgeport Civil Service Comm'n,* 482 F.2d 1333 (2d Cir. 1973), with *Kirkland v. New York State Dep't of Correctional Services,* 520 F.2d 420, *rehearing en banc denied,* 531 F.2d 5 (2d Cir. 1975). Whether such action can be taken by state officials is less certain. See *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Arguably, they can do so whenever they have a reasonable belief that such action is necessary to remedy past discrimination, or they can do so only in circumstances where a court would find such a remedy appropriate, or they are constitutionally barred from ever doing so. The choice among these alternatives is not an easy one. It is enough to decide at this point that upon the allegations of the removal petition, the issue on the merits is one that Congress has authorized for adjudication in a federal court by virtue of the "refusal" clause of § 1443(2).

Accordingly, the motion to remand is denied.

### APPENDIX

### *Portions of Magistrate Latimer's Proposed Ruling*

Turning to the petition's basis, a circumscribed removal jurisdiction over certain civil rights claims is of course conferred by 28 U.S.C. § 1443, which provides as follows:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

These rather generally framed conditions for removal have been narrowly construed. The basic limitation of removal to cases involving "any law providing for . . . equal civil rights" has been interpreted "to mean any law providing for specific civil rights stated in terms of racial equality," *Georgia v. Rachel,* 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966), a definition which would certainly appear to embrace removing defendants' petition references to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (as amended to extend coverage to states and municipalities, Pub.L. 92–261, § 2(1)–(2) (1972) ), cf. *New York v. Galamison,* 342 F.2d 255, 268 (2 Cir.), *cert. denied,* 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965), *Georgia v. Rachel, supra,* and to the longstanding guarantees of 42 U.S.C. § 1981, see *Greenwood v. Peacock,* 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Defendants plainly disclaim any reliance on § 1443(1)'s grant to "any person" of the right to remove, under which a vindication of such federal civil rights

"is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Id.* at 828, 86 S.Ct. at 1812; see, e. g., *Georgia v. Rachel, supra.* Nor do defendants urge entitlement to removal pursuant to the initial phrase of § 1443(2), "(f)or any act under color of authority derived from any law providing for equal rights," a privilege confined to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights," *Greenwood v. Peacock, supra* at 824, 86 S.Ct. at 1810—and as such perhaps superfluous, see *New York v. Horelick,* 424

F.2d 697, n.1 at 698 (2 Cir.), *cert. denied,* 398 U.S. 939, 90 S.Ct. 1839, 26 L.Ed.2d 273 (1970), in view of the separate, broader removal authorization for a federal "officer . . . or person acting under him," cf. 28 U.S.C. § 1442(a)(1), *Greenwood v. Peacock, supra,* n.17 at 820, 86 S.Ct. 1800. The sole purported foundation for removal of the instant controversy is instead the contended applicability of § 1443(2)'s second phrase, empowering the defendant to remove any civil action or criminal prosecution against him "for refusing to do any act on the ground that it would be inconsistent with such [equal rights] law."

That phrase has received little attention since legislative inception as an amendment offered to the eventual Civil Rights Act of 1866 with the single explanatory remark that its purpose was " 'to enable State officers, who shall refuse to enforce State laws discriminating . . . on account of race or color, to remove their cases . . . when prosecuted for refusing to enforce those laws,' " *Greenwood v. Peacock, supra,* n.22 at 824, 86 S.Ct. at 1810, see *New York v. Horelick, supra,* 424 F.2d at 703. Whether its cryptic terms warrant removal in the circumstances here portrayed is accordingly a relatively uncertain issue of statutory interpretation, appropriately resolved by neither an immediate and conclusive assessment of the underlying facts, cf. *New York v. Galamison, supra,* 342 F.2d at 261–262, nor uncritical acceptance of the petition's conclusory use of the very § 1443(2) language under scrutiny.

In resorting to this Court, defendants may be readily understood as alleging that the departure from traditional civil service procedures at the heart of plaintiffs' state court complaint stems from an inconsistency discerned by the Board of Education between locally required personnel practices and overriding federal guarantees against racial discrimination in employment, and the brief opposing remand directly alludes to recent judicial invalidation of the standard civil service examination for Bridgeport police candidates on equal protection grounds advanced by minority group plaintiffs in a suit for equitable relief pursuant to 42 U.S.C. §§ 1981 and 1983, see *Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission,* 483 F.2d 1333 (2 Cir. 1973). It is not a comment on the merits of defendants' apparent claim to have anticipated in their distinct employment sphere both inevitable conflict and its proper resolution to recognize that a determination of unjustifiable racially disproportionate impact of civil service screening turns upon complex questions of fact and law, and that corrective action additionally raises issues "which are delicate as well as intricate", *Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission,* 497 F.2d 1113, 1115 (2 Cir. 1974). Moreover, although the same legal principles may govern different situations and differently labelled claims, cf. *Vulcan Society v. Civil Service Commission,* 490 F.2d 387, n.9 at 394–395 (2 Cir. 1973), critical elements of fact will necessarily vary; as one obvious example, examinations stressing verbal proficiency which unintentionally produce significantly disparate results among racial or cultural groups may possibly be less justifiable as job-related testing for policemen than for school personnel, cf. *Bridgeport Guardians, supra,* 482 F.2d at 1338, but cf. *Chance v. Board of Examiners,* 458 F.2d 1167, 1174–1175 (2 Cir. 1972). Accordingly, while the Board's concern is understandable, a clearly drawn and immediate duty conflict is hardly presented by defendants' seeming expectation that repudiation of provisions of contract and local law would be ultimately compelled by judicial resolution of potential Title VII and § 1981 litigation.

Previous removals appropriately sustained under § 1443(2) afford a sharp contrast to the situation now depicted. Perhaps the best known illustration has been furnished by an aspect of the Indianapolis school segregation case, cf. *United States v. Board of School Commissioners,* 474 F.2d 81 (7 Cir.), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3066, 37 L.Ed.2d 1041 (1973), in which a federal district court decree ordering teacher reassignments to correct racial discrimination in school staffing policy found on

stipulated facts was met by a teachers' suit in state court to enjoin such transfers by the school official defendants on grounds— *inter alia*—of purportedly relevant state law; prompt removal on the heels of the state tribunal's restraining order was upheld under both phrases of § 1443(2), the initial federal law enforcement phrase because in carrying out the federal court order defendants were deemed "persons authorized . . . to act for a federal officer . . . in affirmatively executing duties under a federal law providing for equal civil rights," and the following state official phrase since

> "equally apparent that they would qualify . . . as state officers threatened with punishment for contempt if they disobey the order of a state court and refuse to undo their actual and contemplated transfer of teachers on the ground that to do so would be inconsistent with such federal law."

*Burns v. Board of School Commissioners,* 302 F.Supp. 309, 312 (S.D.Ind.1969), *aff'd,* 437 F.2d 1143, 1144 (7 Cir. 1971). Defendants in the instant case naturally do not claim to have acted for the federal government in a similar sense, but the lack of manifest and specific direction from federal law to act in a particular manner is also significant for their vaguely defined claim to have ignored "inconsistent" state law. The federal officer (or his authorized agent) entitled to remove is one brought before a state court as the result of his performance of duty imposed by federal law; state law must of course give way when plainly repugnant to explicit federal guarantees of equal treatment impelling such affirmative law enforcement, and it is fully consonant with the federal officer's removal privilege to extend a corresponding choice of forum to the state official assailed for non-enforcement of discriminatory local law. An open-ended interpretation of the latter privilege, however, would constitute a patent and unjustifiable departure from the uniformly narrow construction given civil rights removal provisions; the state officer

petitioning for removal should at least be in a position to allege square and definite inconsistency between the state law obligation at issue and controlling federal law, whether demonstrated by conflicting specific terms of national and local enactments, cf. *O'Keefe v. New York City Board of Elections,* 246 F.Supp. 978 (S.D.N.Y.1965), by specific judicial directive, cf. *Burns v. Board of School Commissioners, supra,* or even perhaps by reference to a fundamental, established legal principle of general application as in the hypothetical instance of "a teacher . . . being prosecuted for having admitted black children to a school in which racial segregation was required by state law," *New York v. Horelick, supra,* 424 F.2d at 703.

Assuming for present purposes that the removing defendants are "state officers", cf. *Burns v. Board of School Commissioners, supra,* whose involvement in litigation may genuinely arise from a refusal to adhere to "state law", they make no such clear-cut assertion of inconsistency between local dictates and an overriding federal imperative. Without regard to its soundness, their evident apprehension that civil service "merit" procedures in their official province may be federally suspect is an insufficient substitute for an expressly claimed, direct and immediate clash of opposing duties. Mindful that the more familiar provisions of § 1443(1) have been circumspectly applied to avoid "wholesale dislocation of the historic relationship between the state and the federal courts", *Greenwood v. Peacock, supra* at 831, 86 S.Ct. at 1814, this Court is not inclined to read § 1443(2) to permit federal court determination of every state law inquiry into a local official's conduct in which the defendant's questioned stance is conceivably susceptible of ultimate vindication by sophisticated analysis under federal anti-discrimination laws of previously unsettled application to his particular circumstances. Even the invocation of original federal jurisdiction by independent civil action raising those analogous Fourteenth Amendment issues with which this Court was concerned in *Bridgeport Guardians* would not preclude

consideration of abstention in deference to principles of federalism in the face of existing state court proceedings, cf. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, 43 U.S.L.W. 4379 (1975); there can hardly be greater interference with such judicial proceedings than by assumption of federal jurisdiction over the entire controversy on removal, and an absolute statutory right of recourse to the federal forum would prompt unprecedented federal intrusion if broadly interpreted to embrace the realm of contingent speculation represented by these defendants' intimated hope to prevail finally on persuasive factual and legal development of a federal defense.