**William Wesley DAVIS and Sandra Jean Drummond, Plaintiffs,**

v.

**Mabel V. Roman GATELY, Clerk of the Peace in and for New Castle County, Delaware, Defendant.**

**Civ. A. No. 3336.**

United States District Court
D. Delaware.
June 26, 1967.

Before BIGGS, Circuit Judge, and WRIGHT and STEEL, District Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The plaintiff Davis is a "Negro" and the plaintiff Drummond is a "white person" within the meaning of the Delaware statutes set out hereinafter. The plaintiffs are residents of New Castle County, Delaware, and have the intention to remain indefinitely in that County and State. On March 21, 1967, intending to marry each other and to have that marriage solemnized in Delaware, they appeared together at the office of defendant Gately, Clerk of the Peace of New Castle County, and requested that a marriage license be issued to them. Members of the staff of the Clerk of the Peace, perceiving that Davis was a Negro and that Drummond was a white person, refused to give the plaintiffs a marriage license, declaring that they were ineligible because under the law of Delaware intermarriage was prohibited between a Negro and a white person. Gately testified that a refusal to process an application for a marriage license was the invariable practice of her office when it appeared that a Negro and a white person desired a license to marry each other. With the exception of the asserted disqualification based on race, Davis and Drummond at the time of their application for a license and at the time of the hearing in this court, met all the requirements of Delaware law for obtaining a marriage license and were ready, willing, and able to comply with the legal requirements for the issuance of a marriage license to them. Gately's employees refused to process the plaintiffs' application for a marriage license solely because of race.[1]

Alfred J. Lindh, Wilmington, Del., for plaintiffs.

David P. Buckson, Atty. Gen. of State of Del. and Ruth M. Ferrell, Deputy Atty. Gen. of the State of Del., for defendant.

---

1. Neither plaintiff had signed the Blood Test Certificates issued by the State Board of Health. We entertain no doubt, however, that had the plaintiffs' application for license been proceeded with by the staff of the Clerk of the Peace, the plaintiffs' attention would have been called to the absence of signatures and they would then have signed the certificates. We consider this factual issue raised by the defendant to be *de minimis*.

The defendant also argues that because the records of the State Tax Department failed to show that either plaintiff had filed income tax returns for the period from 1960 through 1966 a question is

Title 13, Delaware Code, Chapter 1, Section 101(a) (2) provides in pertinent part: "A marriage is prohibited and void between * * * [a] white person and a negro [sic] or mulatto."

Title 13, Delaware Code, Chapter 1, Section 102 provides: "The guilty party or parties to a marriage prohibited by section 101 of this title shall be fined $100, and in default of the payment of the fine shall be imprisoned not more than 30 days."

Title 13, Delaware Code, Chapter 1, Section 103 provides: "Whoever, being authorized to issue a marriage license, knowingly or wilfully issues a license for a marriage prohibited by this chapter, or, being authorized to solemnize a marriage, knowingly or wilfully assists in the contracting or solemnizing of a prohibited marriage, shall be fined $100, and in default of the payment of such fine shall be imprisoned not more than 30 days."

Title 13, Delaware Code, Chapter 1, Section 104 provides: "If a marriage prohibited by this chapter is contracted or solemnized outside of the State, when the legal residence of either party to the marriage is in this State, and the parties thereto shall afterwards live and cohabit as husband and wife within the State, they shall be punished in the same manner as though the marriage had been contracted in this State."

The plaintiffs seek to have Section 101 (a) (2) declared unconstitutional in its entirety and Sections 102 through 104, insofar as they provide sanctions for violation of Section 101(a) (2), declared void and of no effect as violative of the Constitution of the United States and of 42 U.S.C. Section 1981. The plaintiffs ask that the defendant be perpetually enjoined and restrained from enforcing the statutory provisions referred to or otherwise refusing on racial grounds to issue a marriage license to them.

It is clear that the plaintiffs cannot lawfully marry or have their marriage solemnized within Delaware without first obtaining a marriage license, 13 Del.C. Section 107, and only the Clerks of the Peace of the Counties of Delaware and their deputies are authorized to issue marriage licenses.

An answer has been filed to the complaint. Evidence has been received, and briefs and requests for findings of fact and conclusions of law have been filed by the parties. No serious question of fact has arisen, and the case is now ripe for adjudication.

■ The defendant has raised two issues. The first is based on the doctrine of abstention; the second defense is that the Delaware statutes are constitutionally valid. In support of the first contention the defendant cites such cases as City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942), and City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S. Ct. 455, 3 L.Ed.2d 562 (1959). The Delaware statutes are sufficiently clear and their application under the circumstances at bar presents no ambiguity. Whatever may have been the boundaries of the doctrine of abstention at the time of the decisions cited above, those boundaries have been settled contrary to the defendant's contention by the opinion of Mr. Chief Justice Warren in Harman v. Forssenius, 380 U.S. 528, 534–537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). A fundamental civil right, the right to marry, is here involved and the immediacy of the constitutional problem presented is apparent. We conclude that the doctrine of abstention is not applicable here and we shall not stay our hand.

Under the facts at bar we are not concerned with Section 104 of Title 13 of the Delaware Code, since the plaintiffs have not testified or in any wise indicated that they intend to contract or solemnize their marriage outside of Dela-

raised as to the plaintiffs' residences and therefore there is an issue as to whether or not the case at bar "was brought solely for the purpose of testing the constitu-

tionality of the Delaware statute." This argument is without merit, for assuming its relevancy, we find that the plaintiffs intended marriage.

ware and thereafter to live and cohabit as husband and wife within this State.

Any issue as to the violation of the prohibitions of the Fourteenth Amendment by Section 101(a) (2) and Section 102 of the Delaware statutes is settled beyond question and in the plaintiffs' favor by the decision of the Supreme Court in Loving, et ux. v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010, handed down on Monday, June 12, 1967. Loving is equally dispositive of the sanctions provided by Section 103, insofar as these, prior to that decision, might have been imposed in a criminal prosecution based upon race. In Loving, Jeter, a Negro, and Loving, a white person, were married in the District of Columbia pursuant to its laws and established their marital abode in Caroline County, Virginia. The Grand Jury of Caroline County handed down an indictment charging the Lovings with violating the Virginia ban on interracial marriages. The Lovings were convicted of violating Section 20–58 of the Virginia Code Ann., providing that any white person and colored person leaving the Commonwealth of Virginia for the purpose of being married, with the intention of returning, and "be[ing] married out of it, and afterwards return to and reside in it, cohabiting as man and wife, they shall be punished as provided * *

[by law]." Section 20–59 of the Virginia Code prescribed the penalty for miscegenation, viz., that any persons who committed that act should be deemed guilty of a felony and should be punished by confinement in the penitentiary for not less than one nor more than five year.[2, 3] The Lovings were convicted and sentenced to prison. The Supreme Court of the United States reversed the judgments of conviction. The thrust of the Virginia statutes at issue in Loving and that of the Delaware statutes here sub judice is to prohibit marriage and its consummation on the grounds of race alone. The ruling of the Supreme Court clears the board of all racial barriers to marriage.

■ We therefore hold Section 101(a) (2) to be invalid and void.[4]

■ The provisions of Section 102 and Section 103 are declared inoperable and void insofar as they impose or purport to impose criminal sanctions based on race.[5]

We shall make no adjudication in respect to Section 104 for the reason previously stated.

A jurisdictional issue remains to be discussed. The complaint in the case at bar was filed March 31, 1967. There was then no doubt that the case was one required to be adjudicated by a three-judge

2. Section 20–58 of the Virginia Code provided: "Leaving State to evade law.— If any white person and colored person shall go out of this State, for the purpose of being married, and with the intention of returning, and be married out of it, and afterwards return to and reside in it, cohabiting as man and wife, they shall be punished as provided in § 20–59, and the marriage shall be governed by the same law as if it had been solemnized in this State. The fact of their cohabitation here as man and wife shall be evidence of their marriage."

Section 20–59 provides as follows: "Punishment for marriage.—If any white person intermarry with a colored person, or any colored person intermarry with a white person, he shall be guilty of a felony and shall be punished by confinement in the penitentiary for not less than one nor more than five years."

3. The opinion in Loving v. Virginia states and deals with other provisions of the Virginia Code relating to miscegenation which need not be stated here.

4. The remaining provisions of the statute are not invalidated by our ruling because its provisions are severable. See Title 1, Delaware Code, Chapter 3, Section 308.

5. If there be question as to whether Sections 102 and 103, Title 13, Delaware Code, imposing criminal sanctions, should be included within our interdiction, we conclude that these criminal sanctions are an integral part of the unlawful barrier interposed by the Delaware statutes to the basic human right of marriage. There should be no need for another or supplementary suit to prevent prosecution of Davis and Drummond should they marry in Delaware as is their pronounced intention.

court appointed pursuant to Section 2281, Title 28, U.S.C., for substantial constitutional issues were involved. Since the decision in Loving no substantial constitutional question remains for determination. Had the instant suit been filed after the decision in the Loving case, viz., after June 12, 1967, the case would have been one to be decided by the United States District Court for the District of Delaware by a single judge. Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Swift & Co. v. Wickham, 382 U.S. 111, 114–115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). See also Powell v. Workmen's Compensation Board of State of New York, 327 F.2d 131, 138 (2 Cir. 1964).

 There are decisions that hold that when a court has jurisdiction of the parties and of the subject matter when a suit is filed, jurisdiction is retained despite intervening circumstances which had they existed at the time of the filing would have presented jurisdictional problems. St Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291, 58 S.Ct. 586, 82 L.Ed. 845 (1938), albeit a removal case, indicated that the status of a suit may be fixed as of the time of its filing. See also note 18 cited to the text at 290–291, 58 S.Ct. 586, id. supra. But in Swift & Co. v. Wickham, supra, note 4 cited to the text, at 114, Mr. Justice Harlan pointed out that where a three-judge district court had been constituted under 28 U.S.C. Section 2281 and the court was not certain whether the issues presented should be adjudicated by three judges or by a single judge, the court decided the issues both as a three-judge tribunal and also as a single-judge tribunal. An appeal was taken to the Supreme Court of the United States from the three-judge judgment and to the Court of Appeals for the Second Circuit from the single-judge judgment. This technique does not seem to have met the condemnation of the Supreme Court and we employ it here. Cf. International Longshoremen's & Ware. Union v. Ackerman, 82 F.Supp. 65, 93–94 (D. Hawaii 1949), reversed on other grounds, 187 F.2d 860 (9 Cir. 1951).

The defendant will be perpetually enjoined from refusing on racial grounds to issue a marriage license to the plaintiffs and will be ordered to issue a marriage license to them upon compliance by them with all requirements and conditions of the Delaware law prerequisite to the issuance of a marriage license, with the exception, however, of requirements and conditions relating to race.

The foregoing constitutes findings of fact and conclusions of law as required by Rule 52(a), Fed.R. Civ.Proc.

Judgments are to be submitted in accordance with this opinion.