**UNITED STATES of America, Plaintiff,**

v.

**G. Clyde BRITTAIN, Probate Judge of Calhoun County, Alabama, and the State of Alabama, Defendants.**

**Civ. A. No. 70–880.**

United States District Court,
N. D. Alabama, E. D.

Dec. 8, 1970.

---

John N. Mitchell, Atty.Gen., Jerris Leonard, Asst.Atty.Gen., Washington, D.C., Wayman G. Sherrer, U.S.Atty., Birmingham, Ala., Gerald W. Jones, Walter Gorman, M. Karl Shurtliff, and Jeremy Schwartz, Attys., Dept. of Justice, Washington, D.C., for plaintiff.

MacDonald Gallion, Atty.Gen., Joseph Victor Price, Jr., Asst.Atty.Gen., Montgomery, Ala., for defendants.

## MEMORANDUM OF DECISION

POINTER, District Judge.

This cause came on to be heard on December 8, 1970, on application by plaintiff for a temporary restraining order and a temporary injunction. At the hearing it was, however, under Rule 65 heard on the merits at the direction of the Court and with the approval of the parties, and submitted for final decision upon the pleadings, testimony, exhibits and stipulations. Defendants' answer to the complaint, dictated into the record, consisted principally of a challenge to the conclusions of law drawn by the plaintiff and of denying that Alabama miscegenation laws were the only reason for refusing to issue a marriage license.

Appearing for the plaintiff were Karl Shurtliff and Walter Gorman, Attorneys, Department of Justice, and Wayman G. Sherrer, United States Attorney. Appearing for the defendants was J. V. Price, Jr., Assistant Attorney General for the State of Alabama. The individual defendant, the Honorable G. Clyde Brittain, Probate Judge of Calhoun County, Alabama, was also present at the hearing.

Jurisdiction for this suit, attacking Alabama's antimiscegenation laws as violative of the Federal Constitution, is grounded in 28 U.S.C. §§ 1343, 1345, 2201. The laws in question are Section 102 of the Alabama Constitution of 1901, which prohibits the legislature from passing any law legalizing marriage between "any white person and a Negro, or descendant of a Negro;" Section 360 of Title 14 of the 1940 Code of Alabama, which makes it a felony for a white person and a Negro to intermarry or live in adultery or fornication with one another; and Section 361 of the same Title 14, which makes it a misdemeanor for a Probate Judge to issue a marriage license knowingly to such persons (or for a justice of the peace or priest to solemnize the rites of matrimony between such persons).

These laws are violative of the Fourteenth Amendment to the Constitution of this country. As stated in the unanimous opinion of the Supreme Court in Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967):

"There can be no doubt that restricting the freedom to marry solely be-

cause of racial classifications violates the central meaning of the Equal Protection Clause. * * * The Fourteenth Amendment requires that the freedom of choice to marry not be restricted by invidious racial discriminations. Under our Constitution, the freedom to marry or not marry, a person of another race resides with the individual and cannot be infringed by the State." (388 U.S. at 12, 87 S.Ct. at 1823–1824)

The matter indeed is so clear since the *Loving* case that no substantial question remains on the question of constitutionality, and therefore it is not necessary to travel the route of a three judge panel under 28 U.S.C. §§ 2281, 2284. See Davis v. Gately, 269 F.Supp. 996 (D. Del.1967). Also see Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Kirkland v. Wallace, 403 F.2d 413 (5th Cir. 1968); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

In their motion to dismiss, and in their arguments on the merits, the defendants make the point that the particular grievance out of which this lawsuit arose may have become moot prior to this hearing. The facts briefly are these:

On November 10, 1970, Sergeant Louis Voyer, a soldier stationed by the Army at Fort McClellan near Anniston, Alabama, and Phyllis Bett, a resident of the city, attempted to procure a marriage license from the office of Probate Judge G. Clyde Brittain. After filling out the application form and waiting several minutes, they were told by one of Judge Brittain's clerks that they could not get a license because it would be against state law. Miss Bett is a Negro, while Sgt. Voyer is a Caucasian.

This suit, brought after complaint had been made at the legal assistance office at Fort McClellan, and to other public and quasi-public agencies, was filed by the United States, over the signature of Attorney General Mitch-

ell, on December 3, 1970, at which time a hearing was set for December 8, 1970, on the interlocutory matters.

On December 4, 1970, Sgt. Voyer and Miss Bett travelled to a neighboring state and were married, apparently without difficulty in obtaining their license. They then returned to Fort McClellan, where they are presently residing, notwithstanding laws of Alabama which may make them subject to prosecution.

Some protestation is made that the refusal to grant a marriage license to the couple can be justified independently of any reliance on the miscegenation laws; *i. e.*, on the failure of Miss Bett to produce identification, proof of residence, or proof of age. It is nevertheless clear to the Court that the motivating reason for declining to issue this license was the difference in races of the couple. Indeed, it strains one's credulity to think that elected officials would refuse marriage licenses to applicants because of lack of proper identification, proof of age, or proof of residence, without (as here) informing them as to why their licenses were being refused or as to what they should bring with them on a return visit. Likewise, Miss Bett's actual age (of seventeen) can hardly be said to dispose of this matter when the testimony is that, although calling her Mother for verification as to age, Judge Brittain did not inquire as to whether she was giving her parental consent to an under-age marriage, as is permitted by other Alabama laws.

If this suit were solely one to determine the rights of the Voyer couple, then defendants' assertion of mootness would have greater weight—and indeed might require a determination of the status of a Tennessee marriage under the Alabama miscegenation statute.

But this case is one brought by the United States as plaintiff—to protect and assert a substantial interest which it has in the invalidation of these laws—and in which the particular com-

plaint of the Voyers stands more as an example of the problems than as the source upon which general relief can be grounded. The United States, in appropriate cases, has standing to sue irrespective of specific statutory mandates. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912); In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L. Ed. 1092 (1895). There is a special interest which the United States has respecting the exercise, without undue frustration by the States, of its military powers. Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); United States v. Arlington County, 326 F.2d 929 (4th Cir. 1964). It is clear that the United States may in proper cases have such an interest in protecting *its* interest as to justify bringing litigation, though perhaps unsolicited, for the ultimate benefit of its agents. Management of its military resources would be seriously impaired if assignments of personnel must be made mindful of their marital situations and peculiar state laws addressed thereto.

If the United States had authority in the first instance to file this suit—and we hold here that there was such authority—then such should not be lost by the subsequent partial self-help employed by the Voyers, that of going across the state-line for a license. Such self-help would not be free from potential criminal sanctions, nor would the availability of such an alternate course of action sufficiently alleviate the unconstitutional burdens placed by Alabama's miscegenation laws.

It would be inappropriate to withhold the general declaratory relief sought here until another similar request can be presented. Although the unconstitutionality of these miscegenation laws cannot be seriously questioned by any trained in the law, we find a situation where the chief law officer of the State of Alabama is not free (and this has been so stipulated) to advise Judges of Probate who are not members of the bar that these miscegenation laws are unconstitutional and should not be followed.

Such advice could only (by force of custom if not of law) be given after the Alabama laws had been declared unconstitutional by a court of competent jurisdiction. Given such a situation, there is no reason for this Court to delay making such a declaration until another couple in just the right circumstances next feels the pinch of these laws.

A judgment will be entered, declaring null, void and violative of the Fourteenth Amendment of the Constitution the Alabama laws in question; enjoining the State of Alabama, its officers, agents, employees, and their successors, and all those acting in concert or participation with them from enforcing or giving any effect to such laws; and requiring the Attorney General of the State of Alabama to advise the Judges of Probate of the several counties of Alabama of the invalidity of Title 14, Section 361, 1940 Code of Alabama under the decision of this Court.