John J. CAVANAGH, et al., Plaintiffs,

v.

Alex K. BROCK, et al., Defendants.

No. 82–545–CIV–5.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Sept. 22, 1983.

Hamilton C. Horton, Jr., Winston-Salem, N.C. (Horton, Hendrick & Cummer, Winston-Salem, N.C., on brief), for plaintiffs.

Leslie J. Winner, Charlotte, N.C. (Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., on brief), for defendants-intervenors.

James Wallace, Jr., Kathleen Heenan, Jerris Leonard, Washington, D.C. (Jerris Leonard & Associates, Washington, D.C., on brief), for defendants.

Before PHILLIPS, Circuit Judge,* DUPREE and BRITT, District Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

This action, commenced in state court and then removed to this court under 28 U.S.C. § 1443(2), challenges the failure of the North Carolina General Assembly to adhere to express provisions of the North Carolina Constitution in adopting its most recent state legislative apportionment plan. Plaintiffs contend the North Carolina Constitution prohibits the General Assembly from splitting counties in apportioning state Senate and House districts, and seek a declaration that the apportionment plan enacted in 1982—which does split several counties—is therefore violative of state law. We find that the state constitutional provisions upon which plaintiffs rely no longer had binding force, as a matter of state law, once the Attorney General of the United States refused to preclear those provisions pursuant to the Voting Rights Act. Accordingly, summary judgment shall enter against plaintiffs and in favor of defendants.

I

Forty of North Carolina's 100 counties are subject to the preclearance requirements of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, necessitating that any "standard, practice, or procedure with respect to voting different from that in force or effect [in those counties] on November 1, 1964" be submitted to the Attorney General for approval. Pursuant to this statutory requirement, in 1981 the North Carolina Board of Elections sought clearance from the Attorney General with respect to 1968 amendments to the North Carolina Constitution. Those amendments, centrally at issue in this litigation, provide that "[n]o county shall be divided in the formation of a senate ... [or] representative district." N.C. Const. Art. II, §§ 3(3) & 5(3).[1]

---

* Sitting by designation of the chief judge of the circuit alternatively as a member of a three judge district court under 28 U.S.C. § 2284 or as a district judge assigned in the public interest under 28 U.S.C. § 291(b) to sit by invitation with Judge Dupree and Judge Britt as a panel of judges of the regular district court.

1. Sections 3 and 5 of Article II of the North Carolina Constitution provide in toto:

Sec. 3. *Senate districts; apportionment of Senators.* The Senators shall be elected from districts. The General Assembly, at the first regular session convening after the return of every decennial census of population taken by order of Congress, shall revise the senate districts and the apportionment of Senators among those districts, subject to the following requirements:

(1) Each Senator shall represent, as nearly as may be, an equal number of inhabitants, the number of inhabitants that each Senator represents being determined for this purpose by dividing the population of the district that he represents by the number of Senators apportioned to that district;

(2) Each senate district shall at all times consist of contiguous territory;

(3) No county shall be divided in the formation of a senate district;

(4) When established, the senate districts and the apportionment of Senators shall remain unaltered until the return of another decennial census of population taken by order of Congress.

Sec. 5. *Representative districts; apportionment of Representatives.* The Representatives shall be elected from districts. The General Assembly, at the first regular session convening after the return of every decennial census of population taken by order of Congress, shall revise the representative districts and the apportionment of Representatives among those districts, subject to the following requirements:

(1) Each Representative shall represent, as nearly as may be, an equal number of inhabitants, the number of inhabitants that each Representative represents being determined for this purpose by dividing the population of the district that he represents by the number

Consistent with his authority under section 5, the Attorney General interposed an objection to the 1968 amendments insofar as they affected the forty North Carolina counties encompassed within the Act's preclearance requirements. As well, he objected to the 1981 state Senate and House reapportionment plans, which also had been submitted for preclearance, because of their perceived effect upon voting rights in the forty covered counties. Following these objections, the General Assembly developed revised state Senate and House reapportionment plans during a February 1982 special session; after those plans were slightly modified to meet further objections interposed by the Attorney General, they were given section 5 preclearance on April 30, 1982. The objection to the 1968 constitutional amendments has not, however, been lifted; section 5 preclearance of those amendments is still lacking.

The instant action—seeking declaratory and injunctive relief restraining the state of North Carolina from implementing the reapportionment plans as precleared on April 30, 1982, by the Attorney General—was instituted less than a week later in the Superior Court of Wake County, North Carolina. Plaintiffs, who are registered voters residing in Forsyth County, North Carolina (one of the sixty counties not subject to section 5 preclearance), alleged that the reapportionment plans violated the 1968 amendments to the State Constitution, N.C. Const. Art. II, §§ 3(3) & 5(3), because Forsyth County was divided between two

districts in both the Senate and House plans. The State, asserting that its non-compliance with the commands of the 1968 amendments was mandated by its need to comply with the requirements of federal law, removed the case to this court pursuant to 28 U.S.C. § 1443(2). A motion to remand was later denied. Following removal, the case was consolidated with two other pending cases challenging the reapportionment plans. All have been designated for determination by a three-judge district court pursuant to 28 U.S.C. § 2284.

■ The parties have filed cross-motions for summary judgment. Plaintiffs contend that, at most, the effect of the Attorney General's objection to the 1968 amendments was to suspend their force only in the forty counties encompassed by the Section 5 preclearance requirement, and that those amendments therefore remained in full force and effect and were binding upon the General Assembly with respect to the sixty non-covered counties.[2] Defendants, in support of their cross-motion for summary judgment, press two distinct defenses. They contend first that, once the Attorney General objected to the 1968 amendments with respect to the forty counties covered by section 5 of the Voting Rights Act, the amendments had no force in the sixty non-covered counties because, as a matter of state law, the amendments fell as a whole once a portion was stricken. In the alternative, defendants urge that compliance with the dictates of the 1968

of Representatives apportioned to that district;
    (2) Each representative district shall at all times consist of contiguous territory;
    (3) No county shall be divided in the formation of a representative district;
    (4) When established, the representative districts and the apportionment of Representatives shall remain unaltered until the return of another decennial census of population taken by order of Congress.

2. Plaintiffs also advanced in their motion for summary judgment an argument, not presented in their initial pleadings, that the 1968 amendments did not constitute a change in a voting "standard, practice, or procedure" different from those in effect on November 1, 1964 and hence were not subject to section 5 pre-

clearance. Their argument ran that, because the amendments were not subject to preclearance, the Attorney General's objection had no effect.

Subsequent to the filing of the summary judgment motion, counsel for plaintiffs properly conceded that this court lacks jurisdiction to entertain their claim that the 1968 amendments were not subject to preclearance. A challenge to the Attorney General's implicit determination that the 1968 amendments constituted voting changes may be brought only in the District Court for the District of Columbia. *See* 42 U.S.C. § 1973*l.* In consequence, this court lacks jurisdiction, however composed, to entertain this claim, and it must be dismissed.

amendments was foreclosed by the Supremacy Clause, because any reapportionment plan faithful to those amendments ultimately would have been violative of the Voting Rights Act and equal protection principles.

## II

■ The parties are in accord that because there are no genuine issues of material fact in dispute the case is ripe for decision on their cross-motions for summary judgment, and we agree. But we must first address whether this court has subject matter jurisdiction over the controversy. Original federal question jurisdiction under 28 U.S.C. § 1331 does not lie here, because plaintiffs advance solely a state constitutional claim; any federal questions put in issue are raised as elements of the defense. But federal courts of course have jurisdiction over cases properly removed pursuant to 28 U.S.C. § 1443 even though original jurisdiction is lacking. *See Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *City of Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *O'Keefe v. Board of Elections,* 246 F.Supp. 978 (S.D.N.Y.1965).

■ Confirming our earlier orders granting defendants' petition for removal and refusing remand, we hold that this case is one properly removed under § 1443(2), which provides that state officers can remove to federal court if sued or prosecuted "for refusing to do any act on the ground that it would be inconsistent with [any law providing for equal rights]." *City of Greenwood,* 384 U.S. at 824 n. 22, 86 S.Ct. at 1810 n. 22. Defendants, in their petition for removal, asserted as a defense to the state constitutional claim that the action challenged was compelled by the Voting Rights Act and the equal protection clause. This colorable federal defense in the removal papers suffices to make removal—and therefore jurisdiction—proper pursuant to § 1443(2), *see White v. Wellington,* 627 F.2d 582, 586 (2d Cir.1980); *Rachel v. Georgia,* 342 F.2d 336, 340 (5th Cir.1965), *aff'd,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), even should we ultimately rest decision exclusively on a state law defense, *see Siler v. Louisville & Nashville Railroad,* 213 U.S. 175, 190–91, 29 S.Ct. 451, 454–55, 53 L.Ed. 753 (1909).[3]

## III

■ With jurisdiction established, we turn to the merits,[4] and look first to de-

---

**3.** Aside from the question of subject matter jurisdiction, there is a substantial possibility that this is not a case embraced within the provisions of the three-judge court statute, 28 U.S.C. § 2284. A three-judge court is mandated pursuant to § 2284 when an action challenges the apportionment of a statewide legislative body on substantial *federal* constitutional grounds. *See Sullivan v. Crowell,* 444 F.Supp. 606, 612 (W.D.Tenn.1978). *Cf. Buffalo River Conservation & Recreation Council v. National Park Service,* 558 F.2d 1342, 1344 (8th Cir.1977); *Mobil Oil Corp. v. Lefkowitz,* 454 F.Supp. 59, 65–66 (S.D.N.Y.1977). In the instant case, however, plaintiffs raise only a *state* constitutional challenge to the apportionment scheme. It is not clear to us that the invocation of a *federal defense* implicating the Voting Rights Act also generates three-judge court jurisdiction.

Due to the substantial likelihood that this matter is beyond the purview of § 2284, Circuit Judge Phillips, originally designated as a member of the statutory three-judge court, has also been designated pursuant to 28 U.S.C. § 291(b) (West Supp.1983) to sit in the alternative as a district judge with the other members of this

court, with the court constituting in that mode a regular district court consisting of a panel of three district judges. *See Strickland v. Burns,* 256 F.Supp. 824, 825 n. 1 (M.D.Tenn.1966); 17 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4234, at 380 & n. 2 (1978). *See also Swift & Co. v. Wickham,* 382 U.S. 111, 114 n. 4, 86 S.Ct. 258, 260 n. 4, 15 L.Ed.2d 194 (1965) (endorsing procedure of sitting in alternative three-judge, one-judge modes); *Query v. United States,* 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942) (same); *Davis v. Gately,* 269 F.Supp. 996, 1000 (D.Del.1967) (same).

**4.** We have, *sua sponte,* considered the possibility of abstention to allow resolution of the state constitutional question in the state courts, but have concluded that abstention would be inappropriate. If we were to abstain, it would be on the basis that resolution of defendants' state law defense—their contention that the 1968 amendments fell as a whole once the Attorney General interposed an objection to those amendments with regard to the forty counties subject to section 5 preclearance—could obviate the need to address their complex federal law

fendants' contention that, as a matter of state law, the constitutional amendments forbidding county splitting upon which plaintiffs rely are of no effect.

■ Under North Carolina law, as generally, when one portion of a statute is declared unconstitutional or is otherwise stricken, the surviving portion will be given effect only if it is severable. *See Flippin v. Jarrell*, 301 N.C. 108, 117–18, 270 S.E.2d 482, 488–89 (1980); *Constantian v. Anson County*, 244 N.C. 221, 227–28, 93 S.E.2d 163, 168 (1956). In *State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. 251, 259–60, 250 S.E.2d 603, 608 (1979), the North Carolina Supreme Court identified two factors to be considered in assessing severability: (1) whether the remaining portions of the statute are capable of being enforced on their own; and (2) whether there is legislative intent to enforce the remainder, "particularly ... whether that body would have enacted the valid provisions if the invalid ones were omitted." An earlier decision of the state's highest court emphasized the second factor, that when a portion of a statute is stricken, the whole must fall absent a clear legislative intent to the contrary: "[w]hen the statute, or ordinance, could be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the

remainder alone." *Jackson v. Guilford County Board of Adjustment*, 275 N.C. 155, 168–69, 166 S.E.2d 78, 87 (1969).

■ The same principles control where portions of the state constitution are for any reason invalidated because violative of paramount federal law. *See Constantian v. Anson County*, 244 N.C. 221, 227–28, 93 S.E.2d 163, 168 (1956) (interpretive principle recognized as applicable to partial invalidation of state constitution; provision in issue found severable from invalidated portion).

■ Applying those state law principles, we hold that the 1968 amendments had no force or effect, statewide, once the Attorney General had interposed an objection with respect to those forty counties subject to section 5 preclearance. Without their preclearance pursuant to section 5, the 1968 amendments were not "effective as law" in the forty covered counties.[5] With the amendments' effect thus territorially circumscribed by federal authority, under North Carolina law they would be effective in the sixty non-covered counties only if there were manifest a legislative, and popular, intent that the amendments should be applied differentially across the state if for any reason—including a failure of section 5 preclearance—they should be held of no effect in respect of some portions of the state. We find no evidence of such an intent in any legislative source.

defense. *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention in this setting, where defendants rather than plaintiffs have raised a state law issue upon which decision could turn, would be most suitably effectuated by allowing defendants to seek a declaratory judgment in state court on that narrow issue. *Cf. England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Assuming the procedure would serve the purpose, it would inevitably result in substantial delay in pressing the matter through state trial and appellate court proceedings and possibly through further federal proceedings to final resolution. In view of the substantial public interest in early resolution of challenges affecting the fundamental electoral processes involved we think that abstention would be improvident. *See Griffin v. County School Board*, 377 U.S. 218, 228–29, 84 S.Ct. 1226, 1231–32, 12 L.Ed.2d 256 (1964). This conclusion is bol-

stered by our perception that the state constitutional issue is not sufficiently uncertain to warrant staying our hand on that account alone. *See Wisconsin v. Constantineau*, 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971).

5. Plaintiffs have attempted to avoid the force of the severability argument by urging that the 1968 amendments were merely suspended, not voided, in the forty covered counties—and therefore that the canons of construction discussed in the text simply do not apply. This attempt to distinguish between "suspension" and "voiding" of the amendments simply misses the mark. No matter how characterized, the problem of construction remains: if the amendments were "suspended"—or rendered "void"—in the forty counties subject to section 5 preclearance, were they "suspended"—or "void" —in the other sixty counties as well?

The illogic, indeed the questionable legality, of such a consequence is manifest. We therefore conclude that the 1968 amendments were necessarily intended by the legislature and the populace voting by referendum upon the legislatively proposed amendments to rise or fall as a whole. This accords with the assessment that was made, following partial invalidation of the amendments by federal authority, by the legislative body that had originally submitted the amendment for adoption by popular referendum. Accordingly, because the amendments then lacked the force of law statewide, plaintiffs' contention that the most recently enacted legislative reapportionment plan was violative of those amendments must fail.

Our resolution of this state law question makes unnecessary any inquiry into defendants' alternative defense that compliance with the mandates of the 1968 amendments would, in any event, have been violative of federal law. We therefore express no opinion on the difficult federal constitutional questions implicit in that defense. *See Alvarado v. Schmidt*, 317 F.Supp. 1027, 1032 (W.D.Wis.1970).

### IV

For the foregoing reasons, summary judgment will be entered dismissing the plaintiffs' claims for lack of jurisdiction and on the merits, respectively.