United States Court of Appeals,

Fifth Circuit.

No. 94-60526.

Abel ALONZO, et al., Plaintiffs-Appellants,

v.

CITY OF CORPUS CHRISTI, a Texas Jurisdiction, et al., Defendants-Appellees.

Nov. 10, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, DAVIS and SMITH, Circuit Judges.

PER CURIAM:

The plaintiffs, Hispanic citizens of Corpus Christi, Texas and the League of United Latin American Citizens, challenge the district court's determination that this case was properly removed to federal court and further assert that the district court erred in finding that they failed to show that the current election process for Corpus Christi City officials violates the Texas ERA or the Voting Rights Act. We affirm.

*I. FACTS*

Prior to 1982, all members of the Corpus Christi City Council were elected in at-large elections. In *Alonzo v. Jones,* C.A. No. C-81-227 (S.D.Tex. Feb. 3, 1983), (*Alonzo I* ) the plaintiffs successfully challenged this method of electing city council members as discriminatory against Mexican Americans. The court entered a consent decree ordering Corpus Christi (the City) to conduct elections under the so-called 5-3-1 system currently in

1

place.  Under the 5-3-1 system, five members of the city council are elected from single member districts, three are elected at large and the mayor is elected at large.  The *Alonzo I* court declared that this system would "insure to Plaintiffs and to the class they represent an equal opportunity with other members of the electorate to participate in the political process and to elect city councilmen of their choice."  *Id.*

In 1991, the plaintiffs filed this suit in Texas State District Court challenging the apportionment of the single member districts and the overall composition of the 5-3-1 election system under the Texas ERA.  The City removed this suit to federal court on the ground that a state court judgment in favor of the plaintiffs would conflict with the federal court's consent decree in *Alonzo I.*

*II. DISCUSSION*

A. Removal

The district court held that this case was properly removed under the "refusal clause" of 28 U.S.C. § 1443(2).[1]  The "refusal

---

[1]Section 1443 provides:

> 1443 Civil rights cases
>
> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*

clause" allows state officials to remove civil rights actions against them to federal court when they demonstrate:

> a colorable conflict between state and federal law leading to [their] refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law.

*White v. Wellington,* 627 F.2d 582, 587 (2d Cir.1980) (quotation omitted). If no colorable conflict between state and federal law exists then removal is improper. *News-Texan Inc. v. City of Garland, Texas,* 814 F.2d 216, 218 (5th Cir.1987) (affirming remand to state court on the ground that city's assertion of conflict was patently invalid).

In this case, the district court found that the City alleged a colorable conflict between the consent decree from *Alonzo I* which mandates the 5-3-1 system and the Texas ERA which, according to the plaintiffs' interpretation, requires the City to hold elections under some other system. The district court noted that if this case were decided by the state court in favor of the plaintiffs, the City would be in the "intolerable position" of having to choose which of the conflicting court orders to follow in upholding its residents' civil rights.

We agree. The 5-3-1 system was implemented under federal court supervision for the express purpose of guaranteeing "Hispanic residents of the City of Corpus Christi, Texas equal access to the political procedures leading to nomination or election of City Council members and Mayor and an equal opportunity with other

---

28 U.S.C.A. § 1443 (West 1994) (emphasis added).

members of the electorate to participate in the political process and to elect representatives of their choice." *Alonzo I,* C.A. No. C-81-227 (S.D.Tex. Feb. 3, 1983). Any challenge of the City's use of this system in its elections necessarily implicates the rights of all voters in Corpus Christi and could change the balance of rights that the federal court found required the 5-3-1 system. This presents a colorable conflict between state and federal law sufficient to justify removal under § 1443(2).

B. ERA and the Voting Rights Act.

The district court viewed the plaintiffs' evidence in the totality of the circumstances and held that it failed to establish that the 5-3-1 plan violates the Voting Rights Act or the Texas ERA. Plaintiffs' allegations of discrimination were based on the relatively few Mexican-American candidates who have been elected to City positions. However, the district court did not err in concluding that these election results are better explained by factors other than discrimination such as low voter turnout among Mexican-Americans and the fact that in many of the elections, the first choice of Mexican-American voters was not the Mexican-American candidate. Indeed, the City produced evidence that the first choice of Mexican-American voters is often elected. The fact that this candidate is not also a Mexican-American does not lead inexorably to the conclusion that the City's system of electing officials is discriminatory.[2]

---

[2]Neither party argued before the district court that *Shaw v. Reno* should inform the court's analysis. *See Shaw v. Reno,* --- U.S. ----, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (race-based

4

For the reasons stated above, we AFFIRM the judgment of the district court.

*   *   *   *   *   *

---

redistricting subject to strict scrutiny).  *See also Miller v. Johnson,* --- U.S. ----, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (decided after the district court's judgment in this case; holding that an allegation that race was the dominant reason for drawing district lines was sufficient to require strict scrutiny analysis).  Because we affirm the district court, we need not consider the possibility that these cases undermine plaintiffs' claims.