Rep. Corrine BROWN, et al.   Plaintiffs

v.

State of FLORIDA, et al.   Defendants

No. 02–60689–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 4, 2002.

Paul M. Smith, Jenner & Block, Washington, DC, W. George Allen, Fort Lauderdale, FL, Ephraim Roy Hess, Hess & O'Loughlin, Fort Lauderdale, FL, for Plaintiffs.

Deborah Kaveney Kearney, Heidi Mary Shelton Hughes, Florida Department of State, General Counsel, Tallahassee, FL, Secretary of the State of Florida, Katherine Harris.

Edward Joseph Pozzuoli, III, Alexis Marie Yarbrough, James A. Scott, Tripp Scott Conklin & Smith, Fort Lauderdale, FL, Thomas Emerson Scott, Jr., Cole, Scott & Kissane, Mimai, FL, Carlos G. Muniz, General Counsel Office of the Governor, Tallahassee, FL, for Governor of the State of Florida, Jeb Bush,

### AMENDED ORDER GRANTING EMERGENCY MOTIONS TO REMAND [1]

JORDAN, District Judge.

Like a swallow returning to Capistrano, this case is once again back in the Southern District of Florida. The principal question on this third go-around is whether Secretary of State Katherine Harris is entitled to remove the action pursuant to 28 U.S.C. § 1443(2) due to the state court's exercise of jurisdiction after the remand of *Brown, et al. v. State of Florida, et al.,* No. 02–60459–Civ–Jordan (*Brown II*). Because the answer to that question is no, the emergency motions to remand filed by the plaintiffs and Attorney General Robert Butterworth are GRANTED.

### I. THE BATTLES OVER A FAVORABLE FORUM

There has been much maneuvering and posturing in the litigation over the Florida legislature's redistricting plan, as the parties seek what they believe will be a more favorable forum for their respective positions. For the benefit of the reader, the procedural skirmishing is set forth below.

### A. THE DISMISSAL OF BROWN I

On January 24, 2002, the plaintiffs in this case filed a complaint in the Circuit Court of the Seventeenth Judicial Circuit

---

1. This amended order corrects typographical errors and makes other non-substantive changes.

in and for Broward County, Florida, against the State of Florida, Governor Jeb Bush, Attorney General Robert Butterworth, and Secretary of State Katherine Harris, alleging violations of both federal and state law in congressional redistricting in Florida. The defendants removed the case here pursuant to 28 U.S.C. §§ 1441 and 1446 on February 22, 2002. *See Brown, et al. v. State of Florida, et al.*, No. 02–60267–Civ–Jordan (*Brown I*). On April 15, 2002, after a three-judge court had been impaneled pursuant to 28 U.S.C. § 2284, the plaintiffs filed a notice of voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1)(i).[2]

## B. THE REMAND OF BROWN II

On March 28, 2002—18 days before voluntarily dismissing *Brown I*—the plaintiffs filed another complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, against the same defendants and House Speaker Tom Feeney, Senate President John McKay, Mitchell Ceasar, and George Lemieux. In this action, the plaintiffs alleged only violations of state law with respect to the Florida legislature's congressional redistricting. On April 3, 2002, Speaker Feeney removed the case to fed-

eral court pursuant to 28 U.S.C. §§ 1131, 1441, and 1446, on the ground that the state-law claims were really federal claims. *See Brown, et al. v. State of Florida, et al.*, No. 02–60459–Civ–Jordan (*Brown II*). President McKay joined in Speaker Feeney's notice of removal, and Governor Bush adopted President McKay's joinder as his own.

On April 5, 2002, the plaintiffs moved to remand the case to state court under 28 U.S.C. § 1447(c), for expedited briefing and determination, and for an award of attorneys' fees and expenses. On April 24, 2002, Attorney General Butterworth, a named defendant, also moved for remand. On April 24, 2002, Speaker Feeney moved to realign Attorney General Butterworth as a plaintiff. Governor Bush and President McKay subsequently joined in this motion by Speaker Feeney. On May 2, 2002, I granted the motions to remand filed by the plaintiffs and Attorney General Butterworth, and the case was remanded to state court under 28 U.S.C. § 1447(c) due to lack of subject-matter jurisdiction. The remand order in *Brown II* is attached.[3]

## C. THE PRECLEARANCE PROCEEDINGS

On May 1, 2002, Governor Bush, President McKay, and Speaker Feeney submit-

---

**2.** The three-judge court began hearing evidence on June 3, 2002, in two other federal cases challenging the Florida legislature's redistricting plan. *See Martinez, et al. v. Bush, et al.*, No. 02–20244–Civ–Jordan; *Maurer v. State of Florida*, No. 02–10028–Civ–Jordan. The plaintiffs in this case had moved to file a complaint in intervention in *Martinez*, but withdrew that motion on April 18, 2002.

**3.** The day after the remand order was issued, the Supreme Court upheld the Florida legislature's redrawing of state legislative districts in a proceeding under Article III, § 16 of the Florida Constitution. *See In re Constitutionality of House Joint Resolution 1987*, 2002 WL

832612, at \*7 (Fla. May 3, 2002). In its decision, the Florida Supreme Court said, among other things, that due to time constraints it was not able to pass on fact-intensive federal challenges to the state legislative districts, including claims of political gerrymandering under the Fourteenth Amendment's equal protection clause and claims based on § 2 of the Voting Rights Act, 42 U.S.C. § 1973. *Id.* at \*5. Such challenges, the Florida Supreme Court said, would have to be brought in a court of "competent jurisdiction." *Id.* at \*7.

ted the congressional redistricting plan for preclearance on behalf of the state of Florida to the United States Department of Justice under § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and sought expedited administrative review. On May 14, 2002, the state of Florida, through Attorney General Butterworth, filed a complaint for declaratory judgment in the United States District Court for the District of Columbia, seeking a determination as to whether the same congressional redistricting plan had the purpose or the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group under Section 5. On May 21, 2002, Attorney General Butterworth filed an amended complaint seeking a declaratory judgment that the congressional redistricting plan satisfies § 5 of the Voting Rights Act. *See State of Florida v. United States*, No. 02–Civ–00941–JR (D.D.C.).

Since then, Attorney General Butterworth has sought a temporary restraining order to prevent the DOJ from continuing with its administrative preclearance review, on the ground that the submission by Governor Bush, Speaker Feeney and President Mc Kay was unauthorized and improper. The DOJ, Governor Bush, Speaker Feeney, and President Mc Kay have asked the district court to stay the action filed by Attorney General Butterworth pending the completion of the DOJ's administrative preclearance review. As of today, neither the DOJ nor the district court have issued any decision concerning preclearance, though the DOJ has indicated in memoranda that it hoped to complete its review during the week of June 3, 2002.

### D. The State Court Proceedings After The Remand In Brown II

On May 9, 2002, *Brown II* returned to state court. One week later, on May 16, 2002, the state court held a status hearing at which the parties addressed the plaintiffs' request to expedite the pretrial procedures and set a trial date. The state court did not rule on the plaintiffs' request to expedite, but construed the defendants' objections to expediting the proceedings as an *ore tenus* motion to stay the state court proceedings on the ground that similar challenges to the congressional plan were pending before a federal three-judge court.

At the status hearing, the state court issued four orders. The first order *sua sponte* appointed an independent expert to assist the court in its resolution of the plaintiffs' claims. The second order directed the plaintiffs to submit memoranda of law addressing the issue of indispensable parties to the action by May 21, 2002, with all defendants to file responses to the plaintiffs' memoranda five days later. The third order directed the defendants to submit, by May 21, 2002, memoranda of law with regard to the issue of representation of the state and state officers, and the authority to employ counsel, other than the Attorney General, in matters like this one. The plaintiffs were to file responses to the defendants' memoranda five days later. The fourth order denied the defendants' *ore tenus* motion to stay the state court proceedings, and indicated that the court was going to exercise jurisdiction over the plaintiffs' complaint.

On May 17, 2002, the plaintiffs voluntarily dismissed all claims against Speaker Feeney, Governor Bush, and President McKay. This left Secretary Harris, the State of Florida, and Attorney General Butterworth as the only defendants in *Brown II*.

### E. The Removal Of Brown III

On May 20, 2002, Secretary Harris removed the action again pursuant to 28

U.S.C. §§ 1331, 1441, 1443(2), and 1446. *See Brown, et al. v. State of Florida, et al.,* No. 02–60689–Civ–Jordan (*Brown III*). Secretary Harris' removal is based on three arguments. First, she contends that removal is proper under 28 U.S.C. § 1443(2) because she is "now subject to state and federal courts asserting jurisdiction over Florida's congressional redistricting plan and is thus placed in the 'intolerable position' of having to chose which of the conflicting court orders to follow in upholding [the] civil rights of the voters of the State of Florida." Second, she asserts that removal is proper under 28 U.S.C. § 1441 because the plaintiffs' political gerrymandering claims—which are premised on their right to vote for their preferred candidates for the House of Representatives—are based on federal law in light of the Florida Supreme Court's unanimous decision in *In re Constitutionality of House Joint Resolution 1987*, 2002 WL 832612, at *7 (Fla. May 3, 2002) (confirming the facial validity of the state legislative districts drawn by the Florida legislature). Third, she maintains that removal is timely because it was effected within 30 days of both the Florida Supreme Court's decision and the plaintiffs' dismissal of the claims against Governor Bush, Speaker Feeney, and President McKay.

The plaintiffs and Attorney General Butterworth move to remand *Brown III* and request an award of attorneys' fees and costs. They contend that removal was improper under § 1443(2) and that the removal notice was defective because two of the defendants—Attorney General Butterworth and the State of Florida—had not acquiesced in the removal. In response to this latter argument, Secretary

Harris urges the realignment of Attorney General Butterworth as a plaintiff and the dismissal of the State of Florida as a nominal party.

On May 29, 2002, after briefing was completed, the parties presented oral argument on the motions to remand.[4]

## II. REMOVAL UNDER 28 U.S.C. § 1443(2)

In relevant part, 28 U.S.C. § 1443(2) provides as follows: "Any of the following civil actions ... commenced in a state court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: ... (2) For any act under color of authority derived from any law providing for civil rights, or for refusing to do any act on the ground that it would be inconsistent with such law." Secretary Harris' removal petition is necessarily based on the second clause of § 1443(2)—the so-called "refusal" clause—because the first clause is inapplicable under these circumstances. *See City of Greenwood v. Peacock*, 384 U.S. 808, 815, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966) (holding that first clause "is available only to federal officers and to persons assisting such officers in the performance of their duties"). The "refusal" clause is "available only to state officers," and was added in 1866 as an amendment by the House of Representatives to the Senate bill. *Id.* at 824 n. 22. The floor manager of the bill explained that the amendment was " 'intended to enable state officers, who shall refuse to enforce state laws discriminating ... on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce

---

4. *Speaker Feeney's motion to participate in oral argument was granted at the hearing,* and his counsel presented argument in opposition to the motion to remand.

those laws.'" *Id.* (quoting Cong. Globe, 39th Cong., 1st Sess., 1367).

### A. Is Unanimity Required?

■ As a preliminary matter, I disagree with the plaintiffs' argument that removal was improper because Secretary Harris failed to obtain the consent of the other remaining defendants, Attorney General Butterworth and the State of Florida. There is a dearth of case law on whether unanimity is required for removal under § 1443(2) (or § 1443 generally), and the few courts or commentators to have addressed the issue have not been in complete agreement. *See Rowe v. Summers,* No. Civ. A. 97–3703, 1998 WL 204784, at *1 n. 10 (E.D.La.1998) (noting that "removal by any one defendant, not necessarily all defendants, is permitted under § 1443"); *Massachusetts Council of Constr. Employers, Inc. v. White,* 495 F.Supp. 220, 221 n. 1 (D.Mass.1980) (implying that consent of all defendants is not required for removal under § 1443(2)); *Bridgeport Educ. Ass'n v. Zinner,* 415 F.Supp. 715, 717 n. 2 (D.Conn.1976) ("The general rule that all defendants who may properly join in the removal petition must do so...need not govern § 1443(2) removal. Such civil rights removal represents a longstanding judgment by Congress that defendants in certain types of civil rights cases should be able to remove their cases to the federal courts."); Ann K. Wooster, Annotation, *Civil Actions Removable from State Court to Federal Court Under 28 U.S.C.A. § 1443,* 159 A.L.R. FED. 377, 400 (2000) (noting that "while under the general removal statute (28 U.S.C.A. § 1441) *all* defendants must timely seek or consent to removal, it would appear that under 28 U.S.C.A. § 1443, *any single defendant* can remove an appropriate case from state court to federal court insofar as the case pertains to that defendant, regardless of whether removal can survive in relation to those aspects of the case dealing with other defendants"). *But see Morrison Cafeteria Co. of Nashville, Inc. v. Johnson,* 344 F.2d 690, 692 n. 2 (6th Cir.1965) (noting, but not passing on, district court's application of rule of unanimity to § 1443); *Mathews v. County of Fremont,* 826 F.Supp. 1315, 1318–19 (D.Wyo.1993) (applying general rule that all defendants must consent to removal to § 1443).

The text and legislative history of § 1443 are silent as to whether all defendants must consent to removal. *See generally Grenchik v. Mandel,* 373 F.Supp. 1298, 1299–1300 & n. 4 (D.Md.1973) (discussing matter). But as noted by the Supreme Court in *Peacock,* § 1443(2) was meant to allow state officials to get before a federal court if they were prosecuted or sued for their refusal to enforce discriminatory state laws. Because that purpose could be nullified (or rendered largely ineffective) if a state official had to depend on the agreement of his or her codefendants—who might not share similar interests—for removal, the better view is that no such consent is necessary under the "refusal" clause of § 1443(2). *See Greenberg v. Veteran,* 889 F.2d 418, 421 (1989) ("The purpose of the 'refusal' clause is to provide a federal forum for suits against state officers who uphold equal protection in the face of strong public disapproval. Congress evidently believed it necessary to provide a federal forum for cases which from the nature of the issues involved stir local passions, because the tenure and independence of federal judges are constitutionally guaranteed, and therefore federal courts are more removed from and generally less susceptible to parochial pressures.").

This conclusion also appears consistent with the Former Fifth Circuit's decision in *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1377–78 (5th Cir.1980), which held that 28 U.S.C. § 1441(d), "when invoked by a 'foreign state' defendant, should operate to remove the entire action pending in state court against all defendants private and domestic, as well as the foreign sovereign." *Arango* is not controlling because the legislative history of § 1443(2) is silent, whereas the pertinent legislative history of § 1441(d) indicated that Congress wanted to permit removal by a foreign state even if other defendants did not want to be in federal court. *See id.* at 1375. Nevertheless, it is instructive because the Former Fifth Circuit also relied on the fact that § 1441(d) referred to the removal of "civil actions" and not merely claims: "[T]he same or similar language in other limited removal provisions, available only to particular types of defendants as is § 1441(d), has consistently been construed and applied to effect the removal of the entire action in multi-party suits." *Id.* at 1376 (citing and discussing cases). Like § 1441(d), § 1443(2) talks about the removal of "civil actions." This language may not be determinative, but in light of the analysis in *Arango* it does suggest that not all of those sued need have a uniformity of purpose insofar as § 1443(2) removal is concerned.[5]

## B. WAS REMOVAL PROPER?

■ "Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal are to be resolved in favor of remand." *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir.2001). The Supreme Court made it very clear in *Peacock* that removal under § 1443(1) could not be based on mere conjecture: "Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will be inevitably be denied by the very act of bringing the defendant to trial in the state court." 384 U.S. at 828. There is no persuasive reason to apply a different rule with respect to § 1443(2), *see generally* 14C CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3728, at 185–186 (3d ed.1998), and courts have therefore held that removal is improper under the "refusal" clause unless a "colorable conflict between state and federal law exists." *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir.1995).

■ Nothing of legal significance has happened in either the state court proceedings or the federal three-judge court proceedings since the remand of *Brown II* to permit a § 1443(2) removal. The state court did exercise jurisdiction and refuse to stay the case, but it has not yet addressed the issue raised by *Smith v. Clark*, 189 F.Supp.2d 548, 554 (S.D.Miss.2002)— whether Article I, § 4 of the United States Constitution permits a Florida state court to draw (or redraw) congressional districts in the absence of delegation by the Florida legislature—and certainly has not set aside the redistricting plan drawn by the Florida

---

**5.** *Cf.* W. SHAKESPEARE, TWELFTH NIGHT, Act I, scene 4, lines 37–38 ("I myself am best when least in company.").

legislature. One would expect the state court to give careful thought to the Article I, § 4 issue, but the mere possibility that it will rule in favor of the plaintiffs is insufficient to permit removal at this time. *Cf. Sexson v. Servaas,* 33 F.3d 799, 803 n. 2, 804 (7th Cir.1994) (declining to address propriety of initial removal, but affirming remand when defendants retreated from federal defense based on the Voting Rights Act at trial: "It simply does not follow … that because the defendants' apportionment plan complied with the Voting Rights Act, the plaintiffs' [state law] attack on that plan necessarily threatened federal law. For all anybody knew, the plaintiffs could have been seeking an alternative apportionment plan which also fully complied with federal law but varied from the defendants' plan only in its interpretation of state law.").

The same is true with respect to the prospect of possibly being subject to two different (but as yet unknown) redistricting plans at some point in the future. Secretary Harris' current situation is different from that of the state officials in *Alonzo,* 68 F.3d at 946, who were sued under state law for trying to implement a federal court consent decree governing the election of city council members, or in *Cavanagh v. Brock,* 577 F.Supp. 176, 180 (E.D.N.C.1983), who alleged that the redistricting plan challenged by the plaintiffs on state law grounds was "compelled by the Voting Rights Acts and the equal protection clause." And unlike the local official in *Greenberg,* 889 F.2d at 420, who had refused to grant an incorporation petition on the ground that it would be inconsistent with the equal protection provisions of the

state and federal constitutions, Secretary Harris has not refused to take any action based on her understanding of what federal law requires or permits.

Finally, the Florida legislature's redistricting plan has not been precleared under § 5 of the Voting Rights Act, so there is not even a valid redistricting plan under which Secretary Harris will conduct elections. Thus, at the present there is not a colorable conflict between federal and state law, and Secretary Harris' reliance on the "refusal" clause is therefore "speculative." *Stephenson v. Bartlett,* 180 F.Supp.2d 779, 785 (E.D.N.C.2001) (state officials could not, under "refusal" clause of § 1443(2), remove action brought by voters to challenge legislature's redistricting plan for state house and senate on state law grounds—plan was not precleared, and in the "absence of preclearance, it is unknown whether plaintiffs' attempts to enforce the provisions of the North Carolina constitution would run afoul of federal voting law").[6]

## C. SHOULD ATTORNEYS' FEES BE AWARDED TO THE PLAINTIFFS?

█ The plaintiffs' motion for attorneys' fees and expenses is DENIED. *See, e.g., Valdes v. Wal–Mart Stores, Inc.,* 199 F.3d 290, 292–293 (5th Cir.2000) (holding that an award of attorney's fees is discretionary under 28 U.S.C. § 1447(c), and that the mere determination that removal is improper does not automatically require the award of attorneys' fees). There are no Eleventh Circuit cases addressing removal under the "refusal" clause of § 1443(2), *cf. Sofarelli v. Pinellas County,* 931 F.2d 718,

---

**6.** To the extent that Secretary Harris is also relying on 28 U.S.C. § 1441 for removal, remand is appropriate for the reasons set forth in *Brown II.* Nothing in the Florida Supreme Court's decision in *Constitutionality of House Joint Resolution 1987* transforms the plaintiffs' state law claims into federal law claims.

724–25 (11th Cir.1991) (addressing § 1443(1)), and state officials are not necessarily required to deny that they have violated state law in order to invoke that clause. *See Greenberg,* 889 F.2d at 421. Though I conclude that removal was improper at this time under the circumstances presented, the § 1443(2) landscape is sufficiently unsettled that an award of fees is not merited.

### III. Conclusion

There may come a time in this case when removal under § 1443(2)'s "refusal" clause becomes appropriate. But for now, the case belongs back in state court, and it is therefore REMANDED. The clerk is directed to send the entire file, together with a certified copy of this order, to the state court forthwith.